# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

# CENTRAL DIVISION

| | |
|---|---|
| **CHARLES COULSON WALDO AND ETHANNE S. WALDO,**  Plaintiffs,  v.  **OCWEN LOAN SERVICING, LLC,**  Defendant. | **REPORT AND RECOMMENDATION**  **Case No. 2:10cv928**  **District Judge Clark Waddoups**  **Magistrate Judge Paul M. Warner** |

This matter was referred to Magistrate Judge Paul M. Warner by District Judge Clark Waddoups pursuant to 28 U.S.C. § 636(b)(1)(B).[1] Before the court are Ocwen Loan Servicing, LLC's ("Defendant" or "Ocwen") (1) motion to dismiss[2] and (2) motion for an order imposing filing restrictions on Charles Coulson Waldo and Ethanne S. Waldo (collectively, "Plaintiffs" or "the Waldos").[3] The court has carefully reviewed the motions and memoranda submitted by the parties. Pursuant to civil rule 7-1(f) of the United States District Court for the District of Utah Rules of Practice, the court elects to determine the motions on the basis of the written memoranda and finds that oral argument would not be helpful or necessary. *See* DUCivR 7-1(f).

---

[1] *See* docket no. 4.

[2] *See* docket no. 6.

[3] *See* docket no. 21.

As an initial matter, because Plaintiffs are proceeding pro se, the court will "construe [their] pleadings liberally and hold the pleadings to a less stringent standard than formal pleadings drafted by lawyers." *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996). That said, the court cannot take on the responsibility of serving as the litigants' counsel. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("[W]e do not believe it is the proper function of the district court to assume the role of advocate for the pro se litigant."). With this in mind, the court now turns to Defendant's motions.

## I. BACKGROUND

### A. Plaintiffs' Complaint

Plaintiffs allege that on August 20, 1998, they obtained a mortgage loan ("Loan") for real property located at 5337 South 3600 West, Taylorsville, Utah 84118 ("Property") from New World Mortgage. Plaintiffs assert that the beneficial interest in the Loan was immediately transferred to First Greensboro Home Equity ("First Greensboro"), which then transferred it to IMC Mortgage Company ("IMC") on September 29, 1998. Plaintiffs state that "[t]here were no assignments ever recorded for either First Greensboro or IMC."[4] Defendant, successor in interest to Ocwen Federal Bank FSB, began servicing the Loan in December 1998. Plaintiffs contend that "IMC was purchased by Citifinancial" in 1999, but that their "mortgage was not sent to Citifinancial."[5]

---

[4] Docket no. 1 at 2.

[5] *Id.* at 2-3.

Plaintiffs allege that Defendant informed them that IMC had transferred their mortgage into the IMC Home Equity Loan Owner Trust 1998-7 and that the mortgage was now owned by Chase Manhattan Bank ("Chase") as "the alleged Indenture Trustee."[6] Plaintiffs further contend that Chase purportedly "assigned the Deed of Trust to The Bank of New York Trust Company, NA, to be the new Indenture Trustee . . . along with a [Power of Attorney]."[7] However, Plaintiffs assert that on January 29, 2009, "a back-dated Assignment of Deed of Trust was recorded stating that The Bank of New York Trust Company, NA, had assigned the Deed of Trust to The Bank of New York Mellon Trust Company, NA, to be the Indenture Trustee" and that the assignment was made on December 28, 1998, but not notarized until January 28, 2009.[8] In early 2009, Defendant foreclosed on the Property, and Plaintiffs were evicted.

Plaintiffs allege claims for (1) violations of the Fair Debt Collection Practices Act ("FDCPA"), *see* 15 U.S.C. §§ 1692 to 1692p; (2) fraud under 18 U.S.C. § 1341; (3) irreparable harm; and (4) emotional distress. Plaintiffs seek $1,685,000 in actual and compensatory damages against Defendant.

### B. Defendant's Requests for Judicial Notice

Defendant filed the instant motion to dismiss along with a request for judicial notice.[9] In addition, along with its reply memorandum in support of its motion to dismiss, Defendant filed a

---

[6] *Id.* at 3.

[7] *Id.* at 3.

[8] *Id.* at 3.

[9] *See* docket no. 8.

second request for judicial notice.[10] In the requests for judicial notice filed under rule 201 of Federal Rules of Evidence, Defendant asks this court take notice of the following public documents:

1. A June 9, 2009 Order granting J.P. Morgan Chase and Defendant's Supplemental Motion for Summary Judgment against Plaintiffs in the Third Judicial District Court, Salt Lake County, State of Utah, Case No. 060915545.

2. A March 24, 2008 Order granting Chase's Motion to Dismiss Plaintiffs' complaint in the Third Judicial District Court, West Jordan, State of Utah, Case No. 076400108.

3. A March 25, 2009 Order granting Defendant's Motion to Dismiss Plaintiffs' complaint in the Third Judicial District Court, Salt Lake County, State of Utah, Case No. 080906701.

4. The docket sheet in Plaintiffs' Bankruptcy Case No. 08-23583 in the United States Bankruptcy Court for the District of Utah.

5. Plaintiffs' Objection to Claim No. 4 in their Bankruptcy Case No. 08-23583 in the United States Bankruptcy Court for the District of Utah filed on July 31, 2008.

6. A November 25, 2008 Order granting The Bank of New York and Defendant's Motion for Summary Judgment against Plaintiffs in Bankruptcy Case No. 08-23583.

7. A July 28, 2009 Order denying Plaintiffs' Motion to Set Aside Order Granting

---

[10] *See* docket no. 14.

Summary Judgment and Order Dismissing Chapter 13 filed in Bankruptcy Case No. 08-23583 in the United States Bankruptcy Court for the District of Utah.

Plaintiffs filed an opposition to the first request for judicial notice[11] but not to the second request. In their opposition, Plaintiffs argue that Defendant has

> never presented any reliable documentation for JPMorgan Chase Bank; Chase Manhattan Bank; The Bank of New York Trust Company NA; or The Bank of New York Mellon Trust Company, NA, which would show that any of these listed institutions as well as Ocwen had Standing Rights or were a legitimate Party in Interest under State and Federal Code 17(a).[12]

Based on this conclusory statement, Plaintiffs request that the court prohibit these documents from becoming part of the record. The court declines to do so.

Under rule 201, "[a] court shall take judicial notice if requested by a party and supplied with the necessary information." Fed. R. Evid. 201(d). "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Because court orders and docket sheets are exactly the type of documents that are typically judicially noticed, and Defendant has provided the necessary information, this court takes judicial notice of the public documents attached to Defendant's requests.[13] *See United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007) ("[W]e may exercise our discretion to take judicial notice of

---

[11] *See* docket no. 11.

[12] *Id.* at 2.

[13] *See* docket nos. 8 and 14.

5

publicly-filed records in our court and certain other courts concerning matters that bear directly upon the disposition of the case at hand.").

## II. DISCUSSION

### A. Defendant's Motion to Dismiss

Defendant contends that Plaintiffs' claims must be dismissed under the doctrine of res judicata. Defendant argues that for the last four years, Plaintiffs have filed numerous lawsuits in state, federal, and bankruptcy court in order to delay foreclosure and eviction proceedings regarding the Property. Defendant contends that this is Plaintiffs' sixth attempt to challenge the foreclosure of the Property.

Defendant asserts that the claim preclusion branch of res judicata applies in this matter. "Claim preclusion involves the same parties or their privies and also the same cause of action, and this precludes the relitigation of all issues that could have been litigated as well as those that were, in fact, litigated in the prior action." *Macris & Assoc., Inc. v. Neways, Inc.*, 16 P.3d 1214, 1219 (Utah 2000) (quotations and citation omitted). For a subsequent action to be barred by claim preclusion, three requirements must be satisfied:

> First, both cases must involve the same parties or their privies. Second, the claim that is alleged to be barred must have been presented in the first suit or must be one that could and should have been raised in the first action. Third, the first suit must have resulted in a final judgment on the merits.

*Id.* (quotations and citation omitted).

For purposes of demonstrating claim preclusion, Defendant relies on Plaintiffs' Chapter 13 bankruptcy matter filed on June 5, 2008, in the United States Bankruptcy Court for the

6

District of Utah, Case No. 08-23583. While Defendant relies solely on Plaintiffs' bankruptcy case for purposes of claim preclusion, Defendant could have relied upon any of the other cases noted above. For instance, on September 25, 2006, Plaintiffs filed a lawsuit in Utah state court against Defendant and others in which Plaintiffs alleged unspecified claims relating to the purported modification of the Loan.[14] Likewise, on December 17, 2007, Plaintiffs filed another lawsuit against Defendant in state court challenging the validity of the Loan.[15] In addition, on April 22, 2008, Plaintiffs filed yet another state court action against Defendant again seeking to challenge the validity of the Loan and to enjoin the foreclosure sale set for June 6, 2008.[16] In the bankruptcy case, Plaintiffs filed their bankruptcy petition the day before the foreclosure sale. Plaintiffs filed an objection to Defendant and The Bank of New York's (collectively, "Creditors") Proof of Claim alleging that they had engaged in "misrepresentation, deception, and fraud" with respect to the Loan.[17] On November 25, 2008, the bankruptcy court granted Creditors' motion for summary judgment finding that Plaintiffs "filed their Chapter 13 petition as part of a scheme to delay, hinder, or defraud Creditor[s], and that scheme involved the filing of multiple bankruptcy petitions affecting the [Property]."[18]

---

[14] *See* docket no. 8, Exhibit 1 (granting Defendant's motion for summary judgment and dismissing the complaint with prejudice).

[15] *See id.*, Exhibit 2 (granting Defendant's motion to dismiss).

[16] *See id.*, Exhibit 3 (granting Defendant's motion to dismiss with prejudice).

[17] *Id.*, Exhibit 5 at 1.

[18] *Id.*, Exhibit 6 at 3.

Over the next year, the Bankruptcy Court denied Plaintiffs' various motions and appeals seeking to set aside the order granting summary judgment.[19] On July 27, 2009, the Bankruptcy Court entered an order barring Plaintiffs from filing further appeals or original proceedings relating to the subject matter of the case without first obtaining authorization from the court.[20] Despite that order, Plaintiffs attempted to file pleadings regarding the Loan and Property. For example, on September 14, 2009, Plaintiffs requested leave of the court to file an expedited FDCPA motion, which was denied on September 21, 2009.[21] On October 30, 2009, Plaintiffs again moved to reopen their bankruptcy, which was denied at a November 30, 2009 hearing.[22]

The court concludes that Defendants have satisfied each element of claim preclusion. First, the parties in both matters are identical. Plaintiffs filed their Chapter 13 bankruptcy petition, and Defendant filed a proof of claim. Plaintiffs objected to Defendant's Claim No. 4, challenging the validity of the lien created by the Loan, and the court treated it as an adversary proceeding ("Adversary Claim"). The plaintiffs were the Waldos, and the defendants were Ocwen and The Bank of New York. As such, the first element for claim preclusion has been established.

Second, in the Adversary Claim, Plaintiffs alleged that the Proof of Claim filed by Defendant was without merit because there was a bad chain of title between various lien holders

---

[19] *See id.*, Exhibit 4.

[20] *See id.*

[21] *See id.*

[22] *See id.*

8

that would have invalidated the Deed of Trust, and the Bankruptcy Court ruled against Plaintiffs on that issue. Likewise, in the instant case, Plaintiffs argue that Defendant was not the holder of the original promissory note or named in the original Deed of Trust and, as such, was not entitled to receive mortgage payments. Plaintiffs are again attempting to dispute the assignment rights of the Loan and have brought essentially the same claims against Defendant under the pretenses of FDCPA, *see* 15 U.S.C. § 1692, and fraud pursuant to 18 U.S.C. §1341.[23]

Furthermore, Plaintiffs' instant claims for emotional distress and irreparable harm could have been brought in any one of the previous cases. The Tenth Circuit has long held that claims that could have been litigated in the prior litigation but were not raised are precluded from being brought in a subsequent action. *See, e.g.*, *Plotner v. AT&T Corp.*, 224 F.3d 1161, 1169 (10th Cir. 2000) (recognizing that "a cause of action includes all claims or legal theories of recovery that arise from the same transaction, event, or occurrence. All claims arising out of the transaction must therefore be presented in one suit or be barred from subsequent litigation."). It is immaterial that Plaintiffs' claims for misrepresentation, deception, and fraud stemming from a purported bad chain of title are now brought under federal statutes. Accordingly, Defendant has established the second element of claim preclusion.

Third, the Bankruptcy Court issued a final judgment on the merits in favor of Creditors. All of Plaintiffs' claims arising out of the allegedly faulty assignment of a mortgage have been

---

[23] It is not lost on the court that 18 U.S.C. § 1341 is a criminal statute reserved for criminal prosecutions by the United States of America. There is no private right of enforcement of a criminal statutes.

adjudicated to finality in the state court and bankruptcy cases. Accordingly, the court concludes that the third element of claim preclusion has been demonstrated.

Based on the foregoing, this court concludes that all three elements of claim preclusion have been satisfied, and Plaintiffs' complaint is barred by the doctrine of res judicata. As such, this court recommends that Plaintiffs' complaint be dismissed with prejudice.

### B. Defendant's Motion to Impose Filing Restrictions Against Plaintiffs

Defendant moves this court to impose filing restrictions on Plaintiffs on the grounds that Plaintiffs are "extremely litigious pro se parties who have filed multiple bankruptcies and lawsuits for the past four years in order to delay the inevitable foreclosure of the Property . . . and eviction proceedings which happened in 2009."[24] This court has the authority to place filing restrictions upon abusive litigants in appropriate circumstances. *See United States v. Samuels*, 417 Fed. App'x. 809, 812 n.1 (10th Cir. 2011) ("We have long held that where a party has engaged in a pattern of litigation activity which is manifestly abusive, restrictions are appropriate, but only after notice and an opportunity to respond are given."). "For a restriction on further filing to be appropriate, the court must (1) provide the litigant with notice and opportunity to be heard; (2) set forth 'the litigant's lengthy and abusive history' and (3) provide 'guidelines as to what the litigant may do to obtain . . . permission to file an action.'" *In re Raiser*, 293 Fed. App'x 619, 620 (10th Cir. 2008) (quoting *Andrews v. Heaton*, 483 F.3d 1070, 1077 (10th Cir. 2007)).

---

[24] Docket no. 21 at 1.

10

By way of the instant motion and Plaintiffs' memorandum in opposition, Plaintiffs have been given notice and an opportunity to be heard on this issue. It is apparent from the record in this case detailed above that Plaintiffs are prolific litigants who have engaged in a long and abusive pattern of wasting a great deal of court time and resources. Therefore, this court recommends that the following filing restrictions be imposed on Plaintiffs in any cases in which they are proceeding pro se:

1. Any new civil complaint that Plaintiffs send to this court will be collected by the Clerk of the Court and sent to a Magistrate Judge for review.

2. The Magistrate Judge will then review the complaint to determine whether it is meritorious and should be filed, or whether it is meritless, duplicative, or frivolous.

3. If the Magistrate Judge determines that the complaint is meritless, duplicative, or frivolous, the Magistrate Judge will forward the complaint to the Chief District Judge for further review.

4. Only with the consent of the Chief District Judge will the complaint be filed.

5. All of Plaintiffs' filings, including any civil complaints they send to the court for filing, must be certified as provided in rule 11 of the Federal Rules of Civil Procedure.

In summary, this court is persuaded that Plaintiffs should be placed on the court's restricted-filer list as set forth above. As such, this court recommends that Defendant's motion to impose filing restrictions upon Plaintiffs be **GRANTED**.

## III. CONCLUSION

Based on the foregoing, **IT IS HEREBY RECOMMENDED** that Defendant's (1) motion to dismiss[25] be **GRANTED** and (2) motion to impose filing restrictions[26] be **GRANTED**.

Copies of this Report and Recommendation are being sent to all parties, who are hereby notified of their right to object. *See* 28 U.S.C. § 636(b)(1). The parties must file any objection to this Report and Recommendation within fourteen (14) days after receiving it. *See id.* Failure to object may constitute waiver of objections upon subsequent review.

**IT IS SO ORDERED.**

DATED this 28th day of September, 2011.

BY THE COURT:

PAUL M. WARNER
United States Magistrate Judge

---

[25] *See* docket no. 6.

[26] *See* docket no. 21.